| | | |
|---|---|---|
| Gazi Abdulhay, M.D., Gynecologic | : | In The United States District Court For |
| Oncology Associates of Lehigh Valley, Inc. | : | The Eastern District of Pennsylvania |
| t/a Lehigh Valley Women's Cancer | : | |
| Center, Abdulhay Associates, L.P., and | : | |
| Bethlehem Ambulatory Surgery | : | |
| Center, LLC, | : | |
| Plaintiffs | : | Civil Action No. 03-4347 |
| | : | |
| | : | |
| v. | : | |
| | : | |
| Bethlehem Medical Arts, L.P., | : | |
| Bethlehem Medical Arts, LLC, | : | |
| Kevin T. Fogarty, M.D., individually | : | |
| and as Managing Director of | : | |
| Bethlehem Medical Arts, L.P., and as | : | |
| President of Bethlehem Medical | : | |
| Arts, LLC, Roth Marz Partnership, P.C. | : | |
| and Mark R. Thompson, individually | : | |
| and as Vice President of Roth Marz | : | |
| Partnership, P.C., | : | |
| Defendants | : | |

### Plaintiffs' Memorandum Of Law In Opposition To Motion To Dismiss Complaint

Joan R. Sheak
Duane Morris LLP
968 Postal Road, Suite 200
P.O. Box 90400
Allentown, PA  18109-0400
(610) 266-3650

Counsel for Plaintiffs Gazi Abdulhay, M.D.,
Gynecologic Oncology Associates of
Lehigh Valley, Inc. t/a Lehigh Valley
Women's Cancer Center, Abdulhay
Associates, L.P., and Bethlehem
Ambulatory Surgery Center, LLC

Plaintiffs' Complaint states claims against five defendants for violations of 42 U.S.C. §§ 1981, 1982 and 1985(3), together with pendant claims under Pennsylvania common law.  Invoking F.R.C.P. 12(b)(6), three of the five defendants, Bethlehem Medical Arts, L.P. ("BMA"), Bethlehem Medical Arts, LLC ("BMALLC") and Kevin T. Fogarty, M.D. ("Dr. Fogarty") have moved to dismiss the Complaint.

Defendants' one paragraph Motion is accompanied by a Memorandum of Law; that Memorandum pays lip service to the standard for dismissal for failure to state a claim on which relief can be granted, but does not apply that standard to plaintiffs' Complaint.  Defendants ignore some facts alleged in the Complaint, quarrel with others, characterize the Complaint's detailed factual averments as "conclusory," and interpret the Complaint's Exhibits to suit defendants' theories.  Disregarding the well established "notice pleading" framework of F.R.C.P. 8(a), defendants bemoan the alleged lack of "evidence" supporting the claims in plaintiffs' Complaint.

Defendants' spins on the claims stated in plaintiffs' Complaint may be appropriate in a closing argument to the jury, but those spins are inappropriate and ineffective in a Rule 12(b)(6) Motion To Dismiss.  Plaintiffs' Complaint meets and exceeds the notice requirements of Rule 8(a) and states federal civil rights and state law claims against each named defendant.  The Motion To Dismiss should be denied.

## I.	Facts Alleged In The Complaint.

Plaintiff Gazi Abdulhay, M.D. ("Dr. Abdulhay") is a licensed physician and surgeon, with a specialty in gynecological oncology (Complaint, ¶¶ 1, 12).  Dr. Abdulhay is a United States citizen of Syrian and Turkish descent; he is an Arab-American (*id*., ¶ 58).

Dr. Abdulhay is President of Gynecologic Oncology Associates of Lehigh Valley, Inc., trading as Lehigh Valley Women's Cancer Center (*id*., ¶¶ 2, 13), General Partner of Abdulhay Associates, L.P.  (*id*., ¶¶ 3, 13) and President and Managing Partner of Bethlehem Ambulatory Surgery Center (*id*., ¶¶ 4, 13).

When Dr. Abdulhay decided to expand his practice and Lehigh Valley Women's Cancer Center by opening an additional office suite and ambulatory surgery center in Northampton County (*id*., ¶ 14), Abdulhay Associates leased space in a medical office building ("the Building") owned by BMA and managed by BMALLC and Dr. Fogarty (*id.*, ¶ 15, 16).  Abdulhay Associates and BMA entered into an April 23, 2001 Lease Agreement (the "Lease") for 6000 net rentable square feet of space on the first floor of the Building (*id*., ¶ 17 and Complaint Exhibit 1).  Abdulhay Associates subsequently leased additional space on the first and second floors of the Building (*id*., ¶ 19), for a total of three Suites (the "Leased Premises").  The Leased Premises consist of Building Suites 103, 200 and 202 (*id*., ¶ 21).  The Lease terms apply to all three Suites (*id*., ¶ 20 and Complaint Exhibit 2).  Lease of space in the Building entitled Abdulhay Associates to purchase limited partnership units in BMA and to membership status in BMALLC (*id*., ¶¶ 18, 19).

The Leased Premises were unfinished shell space when they were leased (*id.,* ¶ 22).  Dr. Abdulhay, Abdulhay Associates, BMA, BMALLC and Dr. Fogarty agreed that Dr. Abdulhay, Abdulhay Associates and Bethlehem Ambulatory Surgery Center would develop the Leased Premises as both medical offices and an ambulatory surgery center, and that Dr. Abdulhay (and other physicians) would occupy the Leased Premises and extend medical care to patients of Dr. Abdulhay, Lehigh Valley Women's Cancer Center, and Bethlehem Ambulatory Surgery Center (*id*., ¶ 23).

Section 7 of the Lease outlines a procedure for "Improvement of the [Leased] Premises" (*id.*, ¶ 24, Exhibit 1).  The Lease has no time limit for completion of improvements to the Leased Premises (*id.*, ¶ 25, Complaint Exhibit 1).

Since two of the Suites leased by Abdulhay Associates were to be fitted out as an ambulatory surgery center (Suites 103 and 200),[1] approval of the plans by the Pennsylvania Department of Health ("DOH") and compliance with a complex set of DOH regulations were required before construction of the ambulatory surgery center could begin (*id.*, ¶ 34).  Plaintiffs needed an architect to design the plans for the ambulatory surgery center (Complaint Exhibit 1, sections 7.2, 7.3).  BMA, BMALLC and Dr. Fogarty provided that architect.

BMA, BMALLC and Dr. Fogarty introduced Dr. Abdulhay to defendants Roth Marz Partnership, P.C. ("Roth Marz") and Roth Marz Vice President Mark Thompson, and recommended that Roth Marz be retained to design fit out plans for the ambulatory surgery center on the Leased Premises (*id.*, ¶ 29).  The five defendants have a long standing relationship with one another; Roth Marz designed the Building for BMA (*id.*, ¶ 28).

On August 30, 2001, Lehigh Valley Women's Cancer Center and Roth Marz signed an "Abbreviated Standard Form of Agreement Between Owner And Architect" (the "Abbreviated Agreement") (*id.*, ¶ 30, Complaint Exhibit 3).  On the same day, Bethlehem Ambulatory Surgery Center and Roth Marz signed an "Addendum to Abbreviated Standard Form of Agreement Between Owner and Architect (the "Addendum") (*id.*, ¶ 30, Complaint Exhibit 4).  The Abbreviated Agreement and the Addendum are for "Tenant Improvements to [the Leased Premises] at the

---

[1]   Suite 202 has been finished and is occupied as a medical office, but Suite 202 is not occupied by plaintiffs (Complaint, ¶ 22); *see also* defendants' Memorandum, Exhibit 5, ¶ 42 at 3.

Bethlehem Medical Arts Center" (the "Project") (*id.*, ¶ 31 and Complaint Exhibit 3 at 1).   The Project entailed fitting out Suites 103 and 200 as an ambulatory surgery center (*id.*, ¶ 34).   At all times, Roth Marz and Mark Thompson were fully aware of the terms and conditions of the Lease (*id.*, ¶ 33).

The first set of plans for the Project was submitted to and approved by DOH on November 2, 2001.   DOH approved revised plans for the Project on December 18, 2002 (*id.*, ¶ 35).

In the spring of 2003, as the prospect of construction of the ambulatory surgery center to occupy Suites 103 and 200 approached, all defendants planned and implemented a strategy designed to halt the Project, to create sham defaults under the Lease, to deprive plaintiffs of quiet enjoyment of the Leased Premises, to oust plaintiffs from the Leased Premises, to terminate the Lease and to force plaintiffs to transfer their interests in the Leased Premises and in BMA and BMALLC to BMA and others (*id.,* ¶¶ 37, 39).   Although Abdulhay Associates was current on all rent obligations under the Lease and although plaintiffs were moving toward completion of the Project and occupation of the ambulatory surgery center in compliance with the Lease, BMA, BMALLC and Dr. Fogarty were determined to get plaintiffs out of the Building and replace them with tenants selected by BMA, BMALLC and Dr. Fogarty (*id.*, ¶¶ 38, 55).

BMA, BMALLC and Dr. Fogarty implemented defendants' strategy via the following acts:

- On May 23, 2003, BMA, through counsel, demanded that Dr. Abdulhay and Abdulhay Associates agree to "fully release lease, note and partnership/membership obligations upon transfer of both spaces to acceptable replacement tenants/partners/members," agree to provide "full cooperation in connection with locating potential replacement tenants/partners/members," and agree to "discontinuation of use of or access to the build-

out fund" and agree to "continuation of rental payments until the effective date for the replacement by the new tenants/partners/members" (*id.*, ¶ 40).

- Pursuant to Section 7.3.3 of the Lease, Abdulhay Associates submitted DOH-approved plans for the Project to BMA for review in June of 2003 (*id.*, ¶ 45). BMA refused to review the plans and prohibited Dr. Abdulhay and Abdulhay Associates from starting construction in the Building. BMA deliberately raised bogus "questions regarding the propriety of Dr. Abdulhay's submission of plans to Hanover Township and the building permits issued in reliance thereon" although BMA knew that the building permit was properly issued (*id.*, ¶¶ 47, 51).

- Abdulhay Associates and Bethlehem Ambulatory Surgery Center arranged financing for the Project, hired Serfass Construction as a contractor, had DOH-approved plans for the Project and had a valid building permit from Hanover Township, so they instructed Serfass Construction to begin construction on the Project on June 10, 2003 (*id.*, ¶¶ 48, 49, Complaint Exhibit 5). On that day, BMA, BMALLC and Dr. Fogarty demanded that all construction be halted or they would direct the police to forcibly block Serfass Construction from the Building (*id.*, ¶ 50).

- On June 10, 2003, Dr. Fogarty personally instructed Serfass Construction to cease all work on Suites 103 and 200 and leave the Building or face arrest. Dr. Fogarty stated that Dr. Abdulhay did not intend to pay Serfass Construction for its work (*id.*, ¶ 61).

- On June 19, 2003, BMA, through Dr. Fogarty, sent Abdulhay Associates a "formal notice of default," alleging that Abdulhay Associates had failed to obtain BMA's approval for plans to improve the Leased Premises before starting construction (the same

6

plans BMA had refused to review), failed to undertake improvement of the Leased Premises, and failed to occupy the Leased Premises for a permitted use (*id.*, ¶ 52).  BMA and Dr. Fogarty did not extend the required 30 day opportunity to cure the alleged defaults as required by Section 17.1.2 of the Lease (*id.* and Complaint Exhibit 1).  BMA invoked rent acceleration and confession of judgment provisions in the Lease, although BMA and Dr. Fogarty knew that Abdulhay Associates was not in default under the Lease (*id., see also* Complaint Exhibit 7).

- On June 30, 2003, BMA, BMALLC and Dr. Fogarty purported to terminate alleged oral leases for Suites 200 and 202 and stated that after July 31, 2003 Dr. Abdulhay would not be authorized to enter the Building (*id.*, ¶ 53 and Complaint Exhibit 8).  BMA, BMALLC and Dr. Fogarty knew that all the Leased Premises were subject to the terms of the Lease (*id.*, ¶ 54 and Complaint Exhibit 2).

Dr. Abdulhay, Abdulhay Associates, Lehigh Valley Women's Cancer Center and Bethlehem Ambulatory Surgery Center were treated differently than Building tenants who were not of Syrian-Turkish descent and/or businesses owned by an Arab American (*id.*, ¶¶ 59-60, 63, 75).  Other Building tenants with substantially the same lease terms as those in the Lease have not yet completed improvements to their leased premises, but were not subjected to threats, harassment, humiliation and sham defaults (*id.*, ¶ 56).  BMA, BMALLC and Dr. Fogarty treated plaintiffs differently than white tenants with substantially similar leases because BMA, BMALLC and Dr. Fogarty want to replace Dr. Abdulhay and his businesses with tenants who are not of Turkish-Syrian descent and are not owned by an Arab Americans (*id.*, ¶ 60).

**II.    Argument:  The Motion To Dismiss Should Be Denied.**

A unanimous Supreme Court recently reiterated that under F.R.C.P. 8(a)(2), "a complaint must include only a short and plain statement of the claim showing that the pleader is entitled to relief."  <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 512 (2002) (reversing Rule 12(b)(6) dismissal of employment discrimination claim).  The "short and plain statement" must simply "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Id.,* *quoting* <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957).  "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims."  <u>Swierkiewicz</u>, 534 U.S. at 512, *citing* <u>Conley</u>, 355 U.S. at 47-48; <u>Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit</u>, 507 U.S. 163, 168-169 (1993).  The <u>Swierkiewicz</u> Court confirmed that pursuant to F.R.C.P. 9, a complaint alleging intentional discrimination may generally aver malice, intent, knowledge and other condition of mind, 534 U.S. at 513 and ns. 3, 4.  The <u>Swierkiewicz</u> Court also held that an employment discrimination plaintiff need not plead a prima facie case of discrimination to survive a Rule 12(b)(6) motion to dismiss.  *Id*. at 515.

The Third Circuit has consistently held that "[g]enerally, in federal civil cases, a claimant does not have to set out in detail the facts upon which a claim is based, but must merely provide a statement sufficient to put the opposing party on notice of the claim."  <u>Weston v. Commonwealth of Pennsylvania</u>, 251 F.3d 420, 428 (3d Cir. 2001), *citing* F.R.C.P. 8; <u>Remick v. Manfredy</u>, 238 F.3d 248, 264 (3d Cir. 2001); <u>Foulk v. Donjon Marine Co.</u>, 144 F.3d 252 (3d Cir. 1998).  Complaints need not plead law or match facts to every element of a legal theory, allege all facts necessary to prove its claim, or allege all that a pleader must eventually prove.  <u>Weston</u>, 251 F.3d at 429

(citations omitted).  The <u>Weston</u> Court added that "[d]iscrimination and other civil rights claims are clearly subject to notice pleading."  *Id.*

When the sufficiency of a complaint is challenged pursuant to Rule 12(b)(6), "the issue is not whether the plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  <u>Sheuer v. Rhodes</u>, 416 U.S. 232, 236 (1974).  A court should not dismiss a complaint under Rule 12(b)(6) for failure to state a claim for relief "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims which would entitle him to relief."  <u>Pryor v. Spivey</u>, 288 F.3d 548, 559 (3d Cir. 2002), *quoting* <u>Conley v. Gibson</u>, 355 U.S. at 45-46.

In evaluating whether dismissal for failure to state a claim is proper, a court must accept all the factual allegations of the complaint as true and must draw all reasonable inferences to aid the pleader.  <u>Pryor</u>, 288 F.3d at 559, *quoting* <u>D.P. Enter v. Bucks County Community College</u>, 725 F.2d 943, 944 (3d Cir. 1984).  The court's inquiry is directed to whether the allegations constitute a statement of a claim under Rule 8(a) and whether plaintiff has a right to any relief based upon the facts pled.  Dismissal under Rule 12(b)(6) for failure to state a claim is limited to those instances where it is certain that no relief could be granted under any set of facts that could be proved.  <u>Douris v. Dougherty</u>, 192 F.Supp. 2d 358, 362 (E.D. Pa. 2002), *citing* <u>Ransom v. Marazzo</u>, 848 F.2d 398, 401 (3d Cir. 1988); <u>Angelastro v. Prudential-Bache Securities, Inc</u>., 764 F.2d 939, 944 (3d Cir. 1985), *cert. denied*, 474 U.S. 935 (1985).

Disposition of defendants' Motion To Dismiss requires the Court to evaluate plaintiffs' Complaint under F.R.C.P. 8(a)(2) to ascertain whether the Complaint gives BMA, BMALLC and Dr. Fogarty "fair notice of what the [plaintiffs' claims are] and the grounds upon which [those claims rest]."  <u>Swierkiewicz</u>, 534 U.S. at 512; *see also* <u>Fortier v. U.S. Steel Group</u>, 2002 U.S. Dist.

LEXIS 11788 * 8-9 (W.D. Pa. 2002).   Under Rule 12(b)(6), the defendant has the burden of demonstrating that the plaintiff has not stated a claim on which relief can be granted.  Moleski v. Cheltenham Township, 2002 U.S. Dist. LEXIS 12311 * 4 (E.D. Pa. 2002).  To prevail on their Motion, BMA, BMALLC and Dr. Fogarty must demonstrate to a certainty that plaintiffs are not entitled to any relief under any set of facts that could be proven.  Davies, 192 F.Supp. 2d at 362; Moleski, 2002 U.S. Dist. LEXIS 12311 * 4.

As established by the Complaint and its Exhibits and as discussed in the balance of this Memorandum, the Complaint gives BMA, BMALLC and Dr. Fogarty abundant notice of what plaintiffs' claims are and the grounds upon which those claims rest.  Assuming the truth of the detailed facts pled in plaintiffs' Complaint and drawing all reasonable inferences in favor of plaintiffs, the Complaint demonstrates that each plaintiff is entitled to relief on all claims against BMA, BMALLC and Dr. Fogarty.

**A.     The Complaint States A Claim Under 42 U.S.C. § 1981 On Which Relief Can Be Granted Against BMA, BMALLC And Dr. Fogarty.**

Section 1981 is entitled "Equal rights under the law" and in pertinent part provides:

(a)  Statement of equal rights.  All persons…shall have the same right in every State…to make and enforce contracts…and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like…penalties…and exactions of every kind and to no other.

(b)  "Make and enforce contracts" defined.  For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification and termination of contracts and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

42 U.S.C. §1981.  The Supreme Court has construed section 1981 to include private as well as public contracts, Runyon v. McCrory, 427 U.S. 160, 168, 174-175 (1976), and "to protect from

discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." St. Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987) (extending section 1981 protection to an Arab-American).

To establish a right to relief under section 1981, a plaintiff must show (1) that he belongs to a racial minority or a racially cognizable group; (2) an intent to discriminate on the basis of race by the defendant; and (3) discrimination concerning one or more of the activities enumerated in section 1981, including the right to make and enforce contracts. Pryor v. Spivey, 288 F.3d at 569; Wood v. Cohen, 1997 U.S. Dist. LEXIS 1364 *11 (E.D. Pa. 1997). Count One of the Complaint satisfies each requirement and states a claim under section 1981 which, if proven, allows plaintiffs to prevail against BMA, BMALLC and Dr. Fogarty.

Dr. Abdulhay is a member of a racially cognizable group protected by 42 U.S.C. § 1981; he is of Turkish and Syrian descent and is an Arab-American (Complaint, ¶ 58). Dr. Abdulhay owns and controls the businesses named as plaintiffs *(id., ¶¶ 2-4, 13).* Corporations and other business entities may file suit under section 1981 and other civil rights statutes under the appropriate factual circumstances. *See, e.g.,* Gersman v. Group Health Association, 931 F.2d 1565, 1568 (D.C. Cir. 1991) (plaintiff corporation had standing to sue under § 1981 for discrimination suffered because its president and owners were Jewish), *vacated on other grounds*, 502 U.S. 1068 (1992); Hudson Valley Freedom Theatre v. Heimbach, 671 F.2d 702 (2d Cir), *cert. den.*, 459 U.S. 857 (1982) (corporation may assert civil rights claim based on race of its owner); Coast Automotive Group v. VW Credit, Inc., 1998 U.S. Dist. LEXIS 23389 * 25-26 (D.N.J. 1998) (same). Abdulhay Associates, Lehigh Valley Women's Cancer Center and Bethlehem Ambulatory Surgery Center were all subjected to discriminatory treatment because Dr. Abdulhay, who owns and controls these

business entities, is an Arab-American of Syrian and Turkish descent.  The Complaint makes plain that all plaintiffs are directly involved in, and impacted by, the events described in the Complaint. While Abdulhay Associates signed the Lease, BMA, BMALLC and Dr. Fogarty understood and agreed that Dr. Abdulhay, Lehigh Valley Women's Cancer Center, Bethlehem Ambulatory Surgery Center and Abdulhay Associates intended to occupy the leased Premises upon completion of the Project (*id.*, ¶ 23).  Lehigh Valley Women's Cancer Center and Bethlehem Ambulatory Surgery Center signed the Abbreviated Agreement and the Addendum (Complaint, ¶¶ 26, 30 and Complaint Exhibits 3, 4).  Abdulhay Associates and Bethlehem Ambulatory Surgery Center obtained the building permit from Hanover Township (*id.*, ¶ 44 and Complaint Exhibit 5).  Each plaintiff has been directly injured by the conduct described in the Complaint.  All four plaintiffs meet the threshold for constitutional standing:  (1) a legally recognized injury; (2) caused by the named defendant or at least fairly traceable to the challenged action of the defendant; and (3) that a favorable decision of the court would likely redress.  Bennet v. Spear, 520 U.S. 154, 167 (1997).

The Complaint alleges that BMA, BMALLC and Dr. Fogarty intended to discriminate against Dr. Abdulhay, Abdulhay Associates, Lehigh Valley Women's Cancer Center, and Bethlehem Ambulatory Surgery Center because of Dr. Abdulhay's ancestry and ethnic characteristics (Complaint, ¶¶ 37, 39, 64).  Although F.R.C.P. 9 permits intent to be averred generally, the Complaint describes specific behavior by BMA, BMALLC and Dr. Fogarty vividly illustrating their discriminatory intent, especially when contrasted with the more favorable treatment extended to white tenants with substantially similar lease terms who had not completed improvements to their leased premises (*id.*, ¶ 56).

12

Finally, the Complaint alleges that BMA, BMALLC and Dr. Fogarty engaged in a series of discriminatory acts explicitly covered by section 1981, such as:

- Impairing the Lease by arbitrarily refusing to review the DOH-approved plans for the ambulatory surgery center (Complaint, ¶ 51);

- Prohibiting Dr. Abdulhay and Abdulhay Associates from starting construction of the ambulatory surgery center *(id.,* ¶ 47);

- Interfering with the DOH-approved plans for the Project and with the building permit issued by Hanover Township to Bethlehem Ambulatory Surgery Center and Abdulhay Associates by prohibiting construction and ejecting Serfass Construction from the Building *(id.*, ¶¶ 48-50, 61);

- Issuing a sham default notice and refusing to honor the 30 day cure period mandated by the Lease *(id.,* ¶ 52);

- Denying that the Lease terms applied to all the Leased Premises, when they knew to the contrary *(id.,* ¶¶ 53, 54 and Complaint Exhibits 2, 8*)*;

- Prohibiting Dr. Abdulhay from entering the Building *(id.*, ¶ 53 and Complaint Exhibit 8; and

- Treating plaintiffs less favorably than white Building tenants with substantially similar leases who have not completed improvements to their lease premises *(id.,* ¶ 56)*.*

The rights enumerated in section 1981 and impaired by these defendants are, at minimum, the right to enforce contracts (the Lease and the contract with Serfass Construction), the operation of the building permit issued by Hanover Township, and the right to proceed with DOH-approved plans for the ambulatory surgery center *(id.*, ¶¶ 57-63*).*

BMA, BMALLC and Dr. Fogarty proffer a threefold challenge to plaintiffs' section 1981 claim against them.  First, they contend that plaintiffs "cannot" establish the requisite intent to discriminate (Memorandum at 10-13).  Defendants' "intent" argument relies entirely on district court cases (*id*.) and primarily on <u>Collins v. Chichester School District</u>, 1998 U.S. Dist. LEXIS 9561 (E.D. Pa. 1998) (Memorandum at 10-12).

For the Court's convenience, plaintiffs attach a copy of <u>Collins</u> to this Memorandum. Defendants' discussion of <u>Collins</u> neglects to mention that the motion before Judge Reed was a motion to dismiss a second amended complaint, and that in a prior order, Judge Reed "gave specific guidance to plaintiffs regarding the legal requirements for pleading these claims."  1998 U.S. Dist. LEXIS 9561 * 2.  The <u>Collins</u> plaintiffs did not follow Judge Reed's instructions.

In <u>Collins</u>, a minor student and his mother filed assorted constitutional and statutory civil rights claims against a school district, its officials, a township and a hospital.  Racial discrimination was alleged.  It was undisputed that the minor student was "a young African American male student who appears to be experiencing significant, if not severe, behavioral and academic problems in his school, with teachers, with classmates and with classes."  *Id*., *4.  The Second Amended Complaint alleged a number of incidents where the plaintiff was involved in physical altercations and other misconduct, resulting in more than one suspension from school.  *Id*., * 5-6.  The Second Amended Complaint alleged that the school violated its own written policy of suspension, that the plaintiff was disciplined to create a negative record against him in order to remove him from the district or place him in a special program, and that disciplinary acts directed to plaintiff were harsher due to his race than those taken toward white students.  *Id*., * 6.

In dealing with the minor student's section 1981 claim, Judge Reed observed that:

> The allegations are nothing more than accusations of race-based discrimination and unequal treatment without any factual support.  Where plaintiffs claim that Foxworth received suspensions unfairly due to this race, they fail to allege facts showing that similarly-situated white students (*e.g.* a white student who was involved in the same physical altercations and incidents, which occurred on the bus, with glue in a locker, or with passing gas in a teacher aid's face) were treated any differently.  The Second Amended Complaint is devoid of factual documentation as to how the School Defendants acted with purposeful race animus or had a pattern or practice of intentional discrimination.  Conclusory, generic allegations will not enable  a plaintiff's claim to survive a motion to dismiss.  See *Odom v. Columbia Univ., 906 F. Supp. 188, 194-95 (S.D.N.Y. 1995)* (dismissing Section 1981 claim where allegations of race discrimination were conclusory); *Trader v. Fiat Distribs., Inc., 476 F. Supp. 1194, 1198 D. Del. 1979)* ("The Third Circuit teaches that a civil rights complaint must specify, with a sufficient degree of particularity, the unlawful conduct allegedly committed by each defendant and the time and the place of the conduct.").

> Accordingly, having permitted plaintiffs to amend their complaint for the second time, I will dismiss with prejudice all of the race discrimination claims against School Defendants brought under Section 1981, Section 1983, and the Fourteenth Amendment . . . There are no set of facts alleged or inferable from the Second Amended Complaint to support these claims as a matter of law.

*Id.*, * 18-19.

Defendants' reliance on <u>Collins</u> merely highlights the flimsiness of their challenge to plaintiffs' section 1981 claim.  <u>Collins</u> does not bind this Court, and the decision appears to invoke a heightened pleading standard for civil rights claims that was rejected by the Supreme Court and the Third Circuit.  <u>Swierkiewicz v. Sorema</u>, 534 U.S. at 514; <u>Nix v. Welch & White, P.A.</u>, 203 U.S. App. LEXIS 289 **4, *quoting* <u>Menkowitz v. Pottstown Memorial Medical Center</u>, 154 F.3d 113, 124 (2d Cir. 1998).  <u>Collins</u> is also undermined by such decisions as <u>Bethea v. Michael's Family Restaurant and Diner</u>, 2001 U.S. Dist. LEXIS 8665 (E.D. Pa. 2001) and <u>Wood v. Cohen</u>, 1997 U.S. Dist. LEXIS 1364 (E.D. Pa. 1997).  <u>Bethea</u> denied defendant's Rule 12 (b)(6) motion to dismiss a

section 1981 claim, holding that the complaint sufficiently pled an intent by defendant restaurant to discriminate against two groups of African American diners.   The African American plaintiffs alleged that they received inferior service to that of white patrons observed at the restaurant:

> The Defendant urges that there is no indication in the complaint that there was an intent to discriminate.  The complaint essentially alleges that the Plaintiffs received an inferior level of service to that of the white patrons they observed and that when they complained to management they were subjected to racial comments by the Defendant Restaurant's employees …. A reasonable inference from the combination of the racial comments and the superior service afforded to the white patrons is that the plaintiffs' service was intentionally inferior based upon their race.  As a result, the Plaintiffs' complaint satisfies the pleading requirements regarding the second element of the Plaintiffs' prima facie case.

2001 U.S. Dist. LEXIS * 7-8.  In <u>Wood</u>, Judge Padova declined to dismiss a section 1981 claim against assorted City of Philadelphia officials, although the complaint provided no details to support the alleged intent to discriminate.  1997 U.S. Dist. LEXIS * 4-6, * 10-11.

Most important, the Second Amended Complaint in <u>Collins</u> is easily distinguishable from the Complaint before this Court, particularly when this Complaint is evaluated, as it must be, pursuant to Rule 8(a) and <u>Swierkiewicz v. Sorema</u>.  In <u>Collins</u>, plaintiffs were unable to allege facts showing that similarly situated white students involved in the same physical altercations and incidents as the plaintiff were treated differently than plaintiff.  1998 U.S. Dist. LEXIS * 18.   In other words, the Second Amended Complaint in <u>Collins</u> focused entirely on how defendants allegedly treated the minor plaintiff, but was silent on how defendants allegedly treated white students involved in the same physical altercations and incidents.  Here, by way of contrast, the Complaint provides abundant detail of the treatment plaintiffs endured and then alleges that "[o]ther tenants in the Building with substantially the same lease terms as those in the Lease have not yet

completed the improvements to their leased premises in the Building, but these tenants have not been subjected to threats, harassment and notices of alleged default for the failure to complete the improvements to their leased premises…."  (Complaint, ¶ 56; *see also* ¶¶ 57-66).

Swierkiewicz held that intent may be generally averred; the complaint in that case satisfied Rule 8(a) because it "detailed the events leading to [plaintiff's] termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination.  These allegations gave respondent fair notice of what petitioner's claims [were] and the grounds upon which they rested."  534 U.S. at 513-514.  As required by Swierkiewicz, the Complaint describes a series of events (with dates) culminating in the sham default notice and exclusion from the Building.  The Complaint then alleges that BMA, BMALLC and Dr. Fogarty treated other white tenants in the Building with substantially similar leases who did not complete improvements to their leased premises more favorably than these defendants treated the plaintiffs.  That is enough to satisfy Rule 8(a).  Plaintiffs need not attach the Building tenant roster, copies of all leases, and the construction history of each tenant.  Evidentiary details demonstrating different treatment of similarly situated white tenants can (and should) await discovery.

As part of their spin on the Complaint, BMA, BMALLC and Dr. Fogarty argue that plaintiffs "summarily" conclude that Dr. Abdulhay's race caused the defendants to undertake a series of actions, including preventing Abdulhay Associates from completing improvements to the Leased Premises (Memorandum at 12).  The Complaint itself refutes this spin.  Plaintiffs enumerate a series of specific acts by BMA, BMALLC and Dr. Fogarty that were aimed exclusively at plaintiffs and not at similarly situated white tenants.  The assertion that these acts were motivated by racial animus is eminently supportable and virtually irresistible when all facts alleged in the

Complaint are accepted as true and all reasonable inferences are drawn to aid the pleader.  Pryor v. Spivey, 288 F.3d at 559.

Abdulhay Associates leased Suite 103, 200 and 202 with the understanding that the Leased Premises would be fitted out as medical offices and an ambulatory surgery center, and occupied by all plaintiffs (Complaint, ¶ 23).  BMA, BMALLC and Dr. Fogarty agreed to this (id.).  The Lease has no time frame for completion of the fit out (Complaint Exhibit 1).  Plaintiffs were required to comply with complicated DOH regulations for the ambulatory surgery center before construction could begin (id., ¶ 34).  Such compliance necessarily takes time.  Plaintiffs moved forward with the Project; they hired Roth Marz, they obtained DOH approval for the plans, they submitted the DOH-approved plans to BMA for review, they arranged financing, they hired a contractor, they obtained a building permit and they instructed their contractor to start work (id., ¶¶ 26-35, 43, 45, 48, 49).  All the while, Abdulhay Associates paid the rent, although the leased Premises were not finished and plaintiffs obviously did not occupy them.[2]  When, in the Spring of 2003, actual construction of the ambulatory surgery drew near, BMA, BMALLC and Dr. Fogarty engaged in increasingly aggressive acts to halt the Project, to get plaintiffs out of the Building, out of BMA, and out of BMALLC, culminating in the June 30, 2003 letter to Dr. Abdulhay stating that he was not authorized to enter the Building after July 31, 2003 (Complaint Exhibit 8).

---

[2]   Suite 202 is finished and occupied (¶ 22), but the Complaint does not allege that any plaintiff occupies Suite 202.  Thus, defendants' contention that the tenant of Suite 202 has not experienced racial animus is meaningless (Memorandum at 12).  Indeed, BMA's Reply to New Matter in BMA's state court action against Abdulhay Associates asserts that "Suite 202 is finished and occupied, though not by Abdulhay, as a medical office."  Defendants' Motion, Exhibit 5, ¶ 42 at 3.  Defendants' purported reliance on the "quiet enjoyment" allegedly experienced by the tenant of Suite 202 (Memorandum at 12) is disingenuous at best.

BMA, BMALLC and Dr. Fogarty protest that if they were biased, Suites 103, 200 and 202 would not have been leased to Abdulhay Associates, nor would the purchase of units in BMA or membership in BMALLC have been permitted (Memorandum at 12-13).  In other words, because defendants did business with plaintiffs in 2001, defendants could not possibly have discriminated against plaintiffs in 2003.  Defendants' premise is false.  Acceptance of the premise means that a landlord who rents to minorities cannot possibly discriminate against minority tenants after the lease is signed.  Section 1981 itself refutes this premise, because it prohibits discrimination in the enforcement (as well as the creation) of contracts.  Moreover, the contention that defendants' benign motivation is shown by their two year delay in implementing an "exit strategy" (Memorandum at 13) actually works against BMA, BMALLC and Dr. Fogarty.  These defendants collected the rent and bided their time until plaintiffs approached the final stage of the Project, and then acted very aggressively – and irrationally – to stall completion of the Project and plaintiffs' actual occupation of the Leased Premises.  It is entirely reasonable to infer that BMA, BMALLC and Dr. Fogarty were driven by bigotry since plaintiffs were treated differently than other occupants of the Building.

The second challenge to plaintiffs' section 1981 claim rephrases the first; BMA, BMALLC and Dr. Fogarty bemoan an alleged lack of "evidence" of discrimination (Memorandum at 13-14).  BMA, BMALLC and Dr. Fogarty cite one case in support of this challenge: Hitchens v. County of Montgomery, 2002 U.S. Dist. LEXIS 2803 (E.D. Pa. 2002).  Defendants unaccountably fail to mention that Hitchens decided a motion for summary judgment, not a Rule 12(b)(6) motion to dismiss.  After discovery in his reverse discrimination case, Hitchens was unable to muster sufficient evidence to enable a fact finder to conclude that the employer was treating some people less favorably than others based upon race.  2002 U.S. Dist. LEXIS at * 24-26.

Hitchens does not support defendants' argument and, in any event, defendants' argument is wrong. Complaints need not match facts to every element of a legal theory, allege all facts necessary to prove a claim, or allege everything that a pleader must eventually prove. Weston v. Commonwealth of Pennsylvania, 251 F.3d at 429. Complaints need not state a prima facie claim. Swierkiewicz, 534 U.S. at 515. Plaintiffs have given BMA, BMALLC and Dr. Fogarty fair notice of the 1981 claim and the grounds upon which that claim rests. That is all plaintiffs must do to withstand a Rule 12(b)(6) motion. Swierkiewicz, 534 U.S. at 512.

Defendants' final challenge to the section 1981 claim is an alleged lack of standing to bring that claim on the part of every plaintiff except Abdulhay Associates (Memorandum at 14-15). BMA, BMALLC and Dr. Fogarty argue that because only Abdulhay Associates was a party to the Lease, only Abdulhay Associates can complain about interference with the Lease (id.).

Plaintiffs have addressed standing supra (Memorandum at 11-12), and need only add here that the Third Circuit addressed constitutional standing in a section 1981 case in Pryor v. Spivey, 288 F.3d at 561. Quoting Bennett v. Spear, 520 U.S. at 167, the Third Circuit noted that constitutional standing requires pleadings that show a legally recognized injury caused or fairly traceable to the challenged action of the defendant, that a favorable court decision would likely redress. Plaintiffs' section 1981 claim against BMA, BMALLC and Dr. Fogarty meets these requirements. While Abdulhay Associates signed the Lease, BMA, BMALLC and Dr. Fogarty knew and agreed that Dr. Abdulhay, Bethlehem Ambulatory Surgery Center and Lehigh Valley Women's Cancer Center would develop and occupy the Leased Premises (Complaint, ¶ 23). Lehigh Valley Women's Cancer Center and Bethlehem Ambulatory Surgery Center obtained DOH approval for the plans for the Project (id., ¶ 30, 35, 43). Abdulhay Associates and Bethlehem Ambulatory

20

Surgery Center obtained the Hanover Township building permit (*id*., ¶ 44 and Complaint Exhibit 5), with which these defendants interfered (*id*., ¶ 47-54). They also contracted with Serfass Construction; defendants interfered with that contract also. (i.d., ¶ 61). All plaintiffs have standing to bring a section 1981 claim against BMA, BMALLC and Dr. Fogarty.

**B.    The Complaint States A Claim Under 42 U.S.C. § 1982 On Which Relief Can Be Granted Against BMA, BMALLC and Dr. Fogarty.**

Section 1982 is entitled "Property rights of citizens" and guarantees all United States citizens "the same right, in every State…as is enjoyed by white citizens thereof to…lease [and] hold…real and personal property." Under section 1982, the right to lease is protected against actions of third parties as well as against actions of the immediate lessor. Sullivan v. Little Hunting Park, Inc., 396 U.S. 229, 237 (1969). Section 1982 has been extended to Arab citizens; *see generally* Shaare Tefila Congregation v. Cobb, 481 U.S. 615, 617-618 (1987).

The elements of a section 1982 claim are (1) defendant's racial animus; (2) intentional discrimination; and (3) deprivation of plaintiff's property rights based upon race. Brown v. Philip Morris, Inc., 250 F.3d 789, 797 (3d Cir. 2001); Lemon v. MTS, Inc., 2001 U.S. Dist. LEXIS 11013 * 4-5 (E.D. Pa. 2001). Plaintiff must allege with specificity facts sufficient to show or raise a plausible inference of these elements. Brown, 250 F.3d at 797.

The Complaint meets all three requirements of section 1982. Racial animus and intentional discrimination are alleged (Complaint, ¶ 76), and facts sufficient to show defendants' state of mind are alleged with particularity, such as refusing to review plans for the ambulatory surgery although required to do so by the Lease (*id*., ¶ 51), refusing to honor the 30 day cure provision in the Lease (*id*., ¶ 52), attempting to evict plaintiffs from the Building with sham defaults (*id*., ¶¶ 51-54), arbitrarily prohibiting the start of construction on the Project (*id*., ¶ 47), threatening to arrest Serfass

Contractors' personnel if they did not leave the Building (*id*., ¶¶ 48-50, 61) and expelling Dr. Abdulhay from entering the Building (*id*., ¶ 53 and Complaint Exhibit 8).  These acts interfered with plaintiffs' rights to lease and hold the Leased Premises.  Moreover, these acts were not visited upon similarly situated white tenants in the Building (*id*., ¶ 75).  Plaintiffs have stated a section 1982 claim on which relief can be granted against BMA, BMALLC and Dr. Fogarty.

In arguing for dismissal of the section 1982 claim, BMA, BMALLC and Dr. Fogarty merely recycle the propositions they used to challenge the section 1981 claim (Memorandum at 15-17). Plaintiffs will not repeat Part II A of this Memorandum, but will note defendants' mistaken reliance on Hitchens v. County of Montgomery (Memorandum at 16).  Not only was Hitchens a summary judgment case; Hitchens was also an employee at will.  Judge Hutton dismissed the section 1982 claim because "employment claims do not fall under the protection of section 1982 because the interest implicated in such cases is neither real nor personal property."  202 U.S. Dist. LEXIS 2803 * 27 (citations omitted).  Hitchens is not authority for dismissal of plaintiffs' section 1982 claim.

Plaintiffs also note that in urging dismissal of the section 1982 claim against them, BMA, BMALLC and Dr. Fogarty continue to draw every possible negative inference from the facts alleged in the Complaint (Memorandum at 16-17).  Rule 12(b)(6) mandates that only inferences favorable to the pleader may be drawn from facts set forth in the pleading.  Applying this standard, the hiatus between the date of the Lease (April 23, 2001) and the start of defendants' discriminatory campaign may be explained by the intervention of September 11, 2001 and its aftermath as well as the fact that construction of the ambulatory surgery center did not become imminent until the spring of 2003, which is when defendants launched their active campaign to keep plaintiffs out of the building and replace them with white tenants selected by BMA, BMALLC and Dr. Fogarty.  In the

interim, BMA continued to accept the rent.  Plaintiffs have not occupied the Leased Premises to date, but had they been permitted to complete the Project, all plaintiffs would have been in the Building every business day, as Dr. Abdulhay cared for the patients of Lehigh Valley Women's Cancer Center and Bethlehem Ambulatory Surgery Center (Complaint, ¶ 14, 23).

C.     **The Complaint States A Claim Under 42 U.S.C. § 1985(3) On Which Relief Can Be Granted Against BMA, BMALLC and Dr. Fogarty.**

Section 1985(3) is entitled "Depriving persons of rights or privileges" and in pertinent part provides:

> If two or more persons in any State . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person  . . . of the equal protection of the laws, or of equal privileges and immunities under the laws . . . in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. §1985(3).

The Third Circuit discussed the parameters and requirements of a 1985(3) claim in Brown v. Philip Morris, 250 F.3d at 805:

> In general, the conspiracy provision of § 1985(3) provides a cause of action under rather limited circumstances against both private and state actors.  In order successfully to bring an action under § 1985(3) for private conspiracy, a plaintiff must show, inter alia, (a) that a racial or other class-based invidious discriminatory animus lay behind the coconspirators' actions, (b) that the coconspirators intended to deprive the victim of a right guaranteed by the Constitution against private impairment, and (c) that the right was consciously targeted, and not just incidentally affected.  [Internal quotation marks and citations omitted].

The <u>Brown</u> Court noted that section 1985(3) claims have been limited to "conspiracies that deprive persons of constitutionally protected rights privileges and immunities that are protected against private, as well as official encroachment."  *Id.*[3]

The <u>Brown</u> Court specifically declined to decide whether violations of 42 U.S.C. §§ 1981 and 1982 can support a violation of section 1985(3), *id.*  at 794, 805.  That question remains open in this Circuit, although it is plain that two of the three judges on the <u>Brown</u> panel were inclined to hold that violations of section 1981 and 1982 will not support a claim under section 1985(3).  However, many courts have held that "a violation of federal rights secured by 1981 may serve as the basis for a § 1985 claim." <u>Johnson v. Greater Southeast Community Hospital Corp.</u>, 903 F.Supp. 140, 153-154 (D.D.C. 1995); <u>Alder v. Columbia Historical Society</u>, 690 F.Supp. 9, 15 (D.D.C. 1988) (rights created under § 1981 are federal rights that may form the basis of a claim under section 1985(3)); <u>Thompson v. International Assoc. of Machinists and Aerospace Workers</u>, 580 F.Supp. 662 667-668 (D.D.C. 1984) (same).  *Accord*, <u>Washington v. Niagara Mohawk Power Corp.</u>, 103 F.Supp. 2d 517, 521 (N.D.N.Y. 2000); <u>Weeks v. Coury</u>, 951 F.Supp. 1264, 1277 (S.D. Texas 1996) (the courts have recognized that section 1985(3) claims may be supported by rights created under section 1981); <u>Hudson v. Teamsters Local Union No. 957</u>, 536 F.Supp. 1138, 1147 (S.D. Ohio 1982); <u>Witter v. A.H. Smith & Co.</u>, 567 F.Supp. 1063 (D.Md. 1983).

---

[3]   Defendants incorrectly assert that "the only constitutional rights guaranteed against private encroachment, as opposed to invasion by government authority are the Thirteenth Amendment right to be free from involuntary servitude and the right of interstate travel."  (Memorandum at 18, *quoting* <u>Bray v. Alexandria Womens Health Clinic</u>, 506 U.S. 263, 278 (1993); <u>Brown</u>, 250 F.3d at 806).  The <u>Brown</u> Court actually observed that "in the context of actions brought against private coconspirators, the Supreme Court has **thus far** recognized only two rights protected under § 1985(3):  "the right to be free from involuntary servitude and the right to interstate travel."  250 F.3d at 805 (citations and internal quotation marks omitted; emphasis added).

To state a claim under section 1985(3), the plaintiff must aver (1) a conspiracy by defendants; (2) designed to deprive plaintiff of equal protection of the laws; (3) motivated by racial or other class-based invidiously discriminatory animus; (4) resulting in injury to person or property, or the deprivation of a right or privilege as a United States citizen; and (5) an act in furtherance of the conspiracy.  Perlmutter v. Pettus, 2001 U.S. Dist. LEXIS 15842 * 2-3 (E.D. Pa. 2001), *citing* Griffin v. Breckenridge, 403 U.S. 88, 102 (1971); Lake v. Arnold, 112 F.3d 682 (3d Cir. 1997), Perlmutter alleged religious and racial discrimination; the plaintiff merely asserted that:

> All defendants knowingly and intentionally engaged in a deliberate policy of retaliation against Plaintiff on account of her race and religion and because of her speech….The conduct of defendants was aimed at discouraging Plaintiff and all white employees from enforcing her rights or complaining about unlawful acts through a coordinated plan and an intentional practice of consistent discrimination and harassment against Plaintiff to oppress and intimidate her for reporting and opposing Defendants' actions.

2001 U.S. Dist. LEXIS * 3-4 (internal quotation marks omitted).   The Perlmutter Court observed that while "few details are offered," the "complaint constitutes sufficient notice of the nature of the claim to withstand a [Rule 12(b)(6)] dismissal motion."  *Id*. at * 5, *citing* Brown v. Philip Morris, 250 F.3d at 796 (*id*., n. 5).  Similarly, in Flesch v. Eastern Pennsylvania Psychiatric Institute, 434 F.Supp. 963, 980 (E.D. Pa. 1977), the Court declined to dismiss a section 1985(3) claim which merely alleged that:

> All named Defendants conspired to discriminate against Plaintiff, and to deny her equal terms and conditions of employment; continued employment, and full and proper seniority and retirement credits, all because of her sex.

The <u>Flesch</u> Court stated that:

> Insofar as plaintiff's claim is based on *42 U.S.C. § 1985(3)*, the factual allegations must show that the named defendants conspired to deprive plaintiff of equal protection of the laws and that one of them performed an overt act in furtherance of that conspiracy, causing injury to plaintiff's person or property or depriving plaintiff of a right or privilege of United States citizenship.   [Citations omitted.] Satisfaction of the specificity requirement generally depends on the allegations of overt acts.

434 F.Supp. at 980.

The Complaint meets the requirements to state a section 1985(3) claim against BMA, BMALLC and Dr. Fogarty.  Plaintiffs allege that in and after the spring of 2003, these defendants conspired with one another and with Roth Marz and Mark Thompson (Complaint, ¶¶ 36-39) to deprive plaintiffs of equal protection of the laws (*id*., ¶¶ 78, 79).  BMA, BMALLC and Dr. Fogarty were motivated by racial or other class based discriminatory animus (*id*., ¶ 81), they engaged in numerous overt acts in furtherance of the conspiracy (*id*., ¶¶ 36-56) and they injured plaintiffs (*id*., ¶ 80).

Plaintiffs allege that the conspiracy was "to deprive plaintiffs of the equal protection of the laws, to deprive plaintiffs of their equal privileges and immunities under 42 U.S.C. § 1981 and 1982, and for the purpose of preventing the DOH and Hanover Township from giving or securing plaintiffs the equal protection of the laws" (*id*., ¶ 79).  At minimum, defendants' interference with plaintiffs' access to the original DOH-approved plans for the Project,[4] their interference with Hanover Township's issuance of a building permit to Abdulhay Associates and Bethlehem

---

[4] As part of the conspiracy, Roth Marz and Mark Thompson refused to deliver the original DOH-approved plans to Bethlehem Ambulatory Surgery Center or its designees, even though required to do so by the Addendum (Complaint, ¶ 41 and Complaint Exhibit 4, Article 6).

Ambulatory Surgery Center,[5] and their interference with plaintiffs' rights under the DOH approved plans and the Hanover Township building permit (*id*., ¶¶ 43-52) are sufficient to satisfy the requirements of section 1985(3).

In challenging plaintiffs' section 1985(3) claim, BMA, BMALLC and Dr. Fogarty erroneously conclude that the Complaint does not allege that they knew anything about Roth Marz' communications with either the DOH or Hanover Township before those communications occurred (Memorandum at 18).  The Complaint alleges that **all** actions taken by all defendants in and after the spring of 2003 were part of their conspiracy and implemented pursuant to that conspiracy (Complaint, ¶ 36-56).  Moreover, the Complaint alleges that BMA, BMALLC and Dr. Fogarty themselves interfered with the DOH-approved plans and the operation of the Hanover Township building permit.  They refused to review the plans (although the Lease required them to do so) and they ejected Serfass Construction from the Building, arrogantly informing plaintiffs that construction under the Hanover Township building permit would not be allowed to occur (Complaint, ¶¶ 47, 50 and Complaint Exhibits 5, 7).  Contrary to defendants' assertion, there was no need for Hanover Township to "revoke" the building permit issued to Abdulhay Associates and Bethlehem Ambulatory Surgery Center (Memorandum at 18) or for the DOH to withdraw its approval of the plans (*id*.).  BMA, BMALLC and Dr. Fogarty, with the assistance of Roth Marz and Mark Thompson, effectively prevented plaintiffs from enjoying the equal benefits of these government-issued privileges.  That is more than enough for a section 1985(3) claim.

---

[5]   By false accusations against Dr. Abdulhay, Roth Marz and Mark Thompson attempted to subvert both the DOH approval of the plans for the ambulatory surgery center and Hanover Township's issuance of the building permit (*id*., ¶¶ 46 and Complaint Exhibit 6).  BMA, BMALLC and Dr. Fogarty based their actions on Roth Marz/Thompson's accusations, knowing the accusations were false (*id*., ¶¶ 47, 51, 52).

**D.**    **Plaintiffs Have Stated Common Law Claims On Which Relief May Be Granted Against BMA, BMALLC and Dr. Fogarty.**

In urging the dismissal of plaintiffs' common law claims, BMA, BMALLC and Dr. Fogarty fling caution to the winds and broach arguments that verge on the ridiculous (Memorandum at 19-21).

For example, these defendants challenge plaintiffs' civil conspiracy claim by asserting that plaintiffs do not allege that these defendants acted with malice "and therefore plaintiffs cannot sustain their claim for conspiracy under Pennsylvania state law" (Memorandum at 19).  These defendants also refer, in passing, to the alleged lack of an averment of "absence of justification" (*id*.).  These challenges overlook that the civil conspiracy claim, Count Ten of the Complaint, incorporates the first 106 paragraphs of the Complaint.  Paragraphs 64, 76, and 106 of the Complaint allege malice on the part of BMA, BMALLC and Dr. Fogarty.  Lack of justification is alleged in paragraph 106.

By way of further example, defendants cite <u>Thompson Coal Company v. Pike Coal Company</u>, 412 A.2d 466 (Pa. 1979) in support of dismissal of the civil conspiracy claim for failure to state a claim on which relief can be granted, without mentioning that <u>Thompson</u> reviewed a grant of summary judgment (Memorandum at 19).  <u>Thompson</u>, 412 A.2d at 467.  The <u>Thompson</u> Court discussed what must be proven to establish a civil conspiracy, not what must be alleged to state a claim for such a conspiracy.  *Id*. at 472-473.

> Under Pennsylvania law, a complaint for civil conspiracy must allege (1) a combination of two or more persons acting with a common purpose to do an unlawful act or to do a lawful act by unlawful means or for an unlawful purpose, (2) an overt act done in pursuit of a common purpose and (3) actual legal damage.

Douris v. Schweiker, 229 F. Supp. 2d 391, 404 (E.D. Pa. 2002), *citing* McKeenan v. CoreStates Bank, 751 A.2d 655, 659 (PA. Super. 2002).  Plaintiffs' Complaint alleges these three elements:  the combination with common purpose to do an unlawful act (Complaint, ¶¶ 36-39, 50, 61) and a lawful act by unlawful means (*id*., ¶¶ 40, 47, 52-56, 79), overt acts in furtherance of the common purpose (*id*., ¶¶ 36-54, 59-63) and actual legal damage (*id*., ¶¶ 63, 65, 77, 80, 83-84, 106).

Elaborating on their justification defense, BMA, BMALLC and Dr. Fogarty repeat their self-serving conclusions that they acted strictly in accordance with the Lease and only after a two year hiatus, during which Abdulhay Associates failed to act (Memorandum at 20).  They add that Dr. Abdulhay, Lehigh Valley Women's Cancer Center and Bethlehem Ambulatory Surgery Center "have no rights under the Lease, and no right to construct in the Building," concluding that the rights of these plaintiffs could not "possibly have been interfered with" (*id*.).

Defendants' conclusions are hollow and their justification defense cannot possibly defeat the civil conspiracy claim at this stage of the case.  The Lease has no deadline for completion of the Project.  The Complaint alleges that between April 23, 2001 (the date the Lease was signed) and the spring of 2003 (when the overt discriminatory campaign began), plaintiffs leased additional space in the Building, retained Roth Marz (at the recommendation of BMA and Dr. Fogarty), had plans for the Project prepared and revised, obtained DOH approval for the plans and the revised plans, hired a contractor, arranged for financing, obtained a valid building permit, and submitted the DOH-approved plans to BMA for review.  Just as completion of the Project reached the final, construction stage, BMA, BMALLC and Dr. Fogarty trashed the Lease, refusing to review the plans, ejecting Serfass Construction from the Building, instructing Dr. Abdulhay that construction in the Building was prohibited, forbidding him entry to the Building and concocting a sham default, without

extending the mandatory cure period (Complaint, ¶¶ 36-40, 45-55 and Complaint Exhibits 1, 2, 5, 7, 8). By engaging in these unjustified and arbitrary actions, BMA, BMALLC and Dr. Fogarty implemented their conspiracy (with one another and with Roth Marz and Mark Thompson) and injured each of the named plaintiffs.

In advocating dismissal of plaintiffs' contract claim BMA, BMALLC and Dr. Fogarty make the astounding statement that "Abdulhay Associates does not allege that it performed under the Lease and, therefore has failed to set forth an essential element of its cause of action" (Memorandum at 20). The Court is referred to paragraph 55 of the Complaint, which alleges that "Abdulhay Associates has paid all of the rent due under the Lease for the entire Leased Premises. Abdulhay Associates is not in arrears on the rent or in default under the Lease." Defendants misstate the Complaint and they also misstate Pennsylvania law. Three (not four) elements are necessary to plead a breach of contract claim: (1) the existence of a contract, including its essential terms; (2) a breach of a duty imposed by the contract; and (3) resultant damages. J.F. Walker Co. v. Excalibur Oil Group Inc., 792 A.2d 1269, 1272 (Pa. Super. 2002). *Accord*, Ware v. Rodale Press, Inc., 322 F.3d 218, 225 (3d Cir. 2003). The Complaint pleads all the required elements of a contract claim.

Finally, BMA, BMALLC and Dr. Fogarty argue that Abdulhay Associates' claim for intentional interference with contract (Count Nine) should be dismissed because their actions in ejecting Serfass Construction were "clearly justified" under the Lease (Memorandum at 21). Again, these defendants are drawing all inferences in their own favor and interpreting the Lease terms to suit their position. Defendants characterize their spin on the Lease terms as "undisputed" (*id.*). The Lease speaks for itself, but defendants' interpretation of that document is very much in dispute. The

Lease certainly does not give BMA the right to refuse to review plans submitted by a tenant or unreasonably withhold approval of tenant construction plans, but that is exactly what BMA did.  If the motive and intent attributed to these defendants is proven, the Lease certainly does not justify their acts.

The Complaint alleges that pursuant to Lease section 7.3.3, Abdulhay Associates submitted the DOH-approved plans to BMA in June of 2003 (*id*., ¶ 45).  Nothing in the Lease required Abdulhay Associates to submit those plans to BMA by some earlier date, and the Complaint illustrates that plaintiffs moved with all deliberate speed toward the goal of obtaining the plans, submitting them for BMA's approval and starting construction.  On June 9, 2003, BMA refused to review the plans (*id*., ¶ 47), in violation of its obligations under the Lease.  If "time is of the essence" under the Lease (as BMA, BMALLC and Dr. Fogarty contend throughout their Memorandum), then BMA must explain why it accepted rent from Abdulhay Associates for two years without taking action sooner.  Defendants cannot have it both ways.

The Complaint alleges that BMA's conduct was unrelated to the terms of the Lease.  If the allegations are proven, BMA's actions are not justified and the Lease will not shield BMA from liability for intentional interference with contract.   At this stage of the case, given BMA's alleged conduct, the Lease does not shield BMA from liability for intentional interference with contract.

## III.    Conclusion.

Defendants' Memorandum may be useful as a first draft of a closing argument to the jury, but it does not provide reasons to dismiss any of plaintiffs' claims under Rule 12(b)(6).   The Complaint exceeds the requirements of Rule 8(a) and BMA, BMALLC and Dr. Fogarty have not approached the burden of establishing that relief cannot be granted on any or all of plaintiffs' claims against them.  Controlling law requires that plaintiffs be given the opportunity to prove their claims. The Motion to Dismiss should be denied.

DUANE MORRIS LLP


By: _____
       Joan R. Sheak
       Atty. I.D. No. 24746
       968 Postal Road, Suite 200
       P.O. Box 90400
       Allentown, PA  18109-0400
       (610) 266-3650

       Counsel for Plaintiffs
       Gazi Abdulhay, M.D.,
       Gynecologic Oncology Associates of
       Lehigh Valley, Inc. t/a
       Lehigh Valley Women's Cancer Center,
       Abdulhay Associates, L.P. and
       Bethlehem Ambulatory Surgery
       Center, LLC

**Certificate Of Service**

I hereby certify that on this 15th day of September, 2003, I sent a true and correct copy of Plaintiffs' Memorandum Of Law In Opposition To Motion To Dismiss Complaint and proposed Order by electronic transmission and first class mail to:

Maura E. Fay
Dilworth Paxon LLP
3200 Mellon Bank Center
1735 Market Street
Philadelphia, PA 19103-7595

and by first class mail to:

Robert J. Ray
Burns, White & Hickton
120 Fifth Avenue, Suite 2400
Pittsburg, PA 15222-3001

Michael Deschler, Esquire
Littner, Deschler & Littner
512 North New Street
Bethlehem, PA 18018

DUANE MORRIS LLP

By: _____
        Joan R. Sheak
        Atty. I.D. No. 24746
        968 Postal Road, Suite 200
        P.O. Box 90400
        Allentown, PA  18109-0400
        (610) 266-3650

        Counsel for Plaintiffs
        Gazi Abdulhay, M.D.,
        Gynecologic Oncology Associates of
        Lehigh Valley, Inc. t/a
        Lehigh Valley Women's Cancer Center,
        Abdulhay Associates, L.P. and
        Bethlehem Ambulatory Surgery
        Center, LLC

LV\33650.1